**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br><br>**v.**<br><br>**KEITH A JEFFERSON,**<br>**Defendant.** | **CASE NO. 5:26-CR-47-KKC-EBA**<br><br>**OPINION AND ORDER** |

*** *** ***

This matter comes before the Court on defendant Keith A. Jefferson's motion (R. 15) to suppress all evidence seized by law enforcement officers from his residence at 117 Payne Ave Georgetown, Kentucky, pursuant to a search warrant. He also asks that all evidence that flowed from the search be suppressed as fruits of the poisonous tree. Jefferson is charged with illegally possessing firearms as a convicted felon.

Jefferson argues in his motion that the Court should suppress the evidence seized from his residence because the issued warrant did not establish probable cause to believe that evidence of a crime would be found at his residence as required by the Fourth Amendment. The motion claims suppression is warranted because the affidavit was stale and because the warrant did not establish a nexus between the alleged possession of the firearms and the Payne Ave residence.

## I. FACTS

In the affidavit, dated February 17, 2026, Peace Officer Ethan Woodrow stated he had grounds to believe that contraband or evidence of a crime would be found at 117 Payne Ave in Georgetown, Kentucky. He stated he had been an officer with the Georgetown Police Department for three years.

Officer Woodrow's affidavit set forth the following information. On February 16, 2026, Officer Woodrow received an email detailing a tip from the department's "crime stoppers liaison." The email stated Keith Jefferson had shown the tipster firearms during a FaceTime call from his home. The tipster said he knew Jefferson was a felon, and the tipster shared several screen shots of the call that showed Jefferson holding different firearms.

Officer Woodrow identified Jefferson by comparing the screenshots to the photo on his operator's license. Additionally, a criminal history report confirmed Jefferson is a convicted felon, and Probation and Parole confirmed he is on supervised probation.

Jefferson's license and the registration for a 2010 Dodge Charger listed in his name identified the 117 Payne Ave address as his residence. The location was confirmed by Officer Woodrow when he observed Jefferson's vehicle parked outside the residence during patrol on February 16, 2026. Additionally, Officer Woodrow also observed Jefferson's girlfriend, Melody Coons, had a vehicle parked outside the residence. Flock license plate reader cameras also showed Jefferson riding between Lexington and Georgetown over the previous couple of months.

Officer Woodrow stated in the affidavit that based on training and experience the firearms in the FaceTime call screenshots "appear to be legitimate firearms" and stated Jefferson had a history of possessing firearms as a convicted felon. Officer Woodrow listed the firearms as "a handgun with a drum style magazine," "an AR-15 style rifle" with a mounted sight and light, and a handgun with a sight and extended magazine.

Officer Woodrow also compared photos from the FaceTime call screenshots to photos from a realtor post for the 117 Payne Ave property. The photos from the realtor website showed a ceiling fan that matched one found in screenshots from the FaceTime call, with both photos showing a brown fan "with gold furniture and a glass bowl over the light."

Based on this information, a state district court judge issued a warrant permitting the search of 117 Payne Ave.

## II. ARGUMENT

Jefferson argues that the warrant lacked probable cause under two theories. First, Jefferson argues that the information was stale because the affidavit did not identify the date of the FaceTime call the tipster took screenshots of. Second, Jefferson argues that the affidavit did not establish a nexus between alleged possession of the firearms and the 117 Payne Ave residence. For this kind of challenge, "the review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009); *see also United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010).

The Fourth Amendment requires probable cause for a search warrant to be issued, *United States v. Laughton,* 409 F.3d 744, 747 (citing U.S. Const. amend. IV; *United States v. Helton,* 314 F.3d 812, 819 (6th Cir. 2003)), and requires that a search warrant describe with particularity the place to be searched and the items to be seized, *United States v. Bethal,* 245 Fed.Appx. 460, 464 (6th Cir. 2007) (quoting U.S. Const. amend. IV).

An affidavit must "provide the magistrate with a substantial basis for determining the existence of probable cause." *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983). A magistrate issuing a search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Brown*, 858 F.3d 375, 381 (6th Cir. 2016) (quoting *Gates*, 462 U.S. at 238). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 243 n. 13. The Court reviews the affidavit as

a whole based on the "totality of the circumstances" rather than with "line-by-line scrutiny." *United States v. Houghton*, 861 F.App'x 83, 88 (6th Cir. 2021); *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013). "A magistrate's determination of probable cause is afforded great deference by the reviewing court." *United States v. Greene*, 250 F.3d 471 , 478 (6th Cir. 2001). A determination to grant a search warrant is reversed only "if the magistrate arbitrarily exercised his or her authority." *Brown*, 732 F.3d at 573.

*A. Staleness*

Jefferson's motion argues the affidavit is stale because it did not state when the tipster's FaceTime call with Jefferson occurred and because the tip did not include "contextual clues" about when the observation took place.

The probable cause for a search "is concerned with facts relating to a presently existing condition." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998); *see also United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006). The critical question for magistrates is whether the affidavit contains information that "established that there was a fair probability that [evidence] would still be found at [the location of the search]." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) (quoting *Spikes*, 158 F.3d at 923). A staleness inquiry examines the specific circumstances in each case and its purpose "is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *Spikes*, 158 F.3d at 923 (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). Courts consider four factors in determining staleness: (1) whether the character of the crime is a chance encounter or continuous in nature; (2) whether the suspected criminal is nomadic or entrenched; (3) whether the evidence to be seized is perishable or enduring; and (4) whether the place to be searched is a mere forum of convenience or secure operational base. *Abboud*, 438 F.3d at 572–73 (citing *Spikes*, 158 F.3d at 923).

The Sixth Circuit has found that "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." *Id.* at 573 (citing *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001). Additionally, the Sixth Circuit has held illegal firearm possession "is not a one-time occurrence but rather a continuous and ongoing offense." *United States v. Goodwin*, 552 F. App'x 541, 544 (6th Cir. 2014). The continuous nature of illegal firearm possession impacts a staleness inquiry. In *United States v. Pritchett*, a magistrate judge issued a warrant more than four months after a witness had last seen the defendant in possession of the firearms, and the Sixth Circuit held the information was not stale, concluding, "[f]irearms . . . are expected to remain in a criminal's possession for a long period of time." *United States v. Pritchett*, 40 F.App'x 901, 905–06 (6th Cir. 2002). Another case held information that indicated a defendant's possession of a firearm two years before was not stale. *United States v. Lancaster*, 145 F.App'x 508, 513 (6th Cir. 2005). Jefferson is accused of being a felon in possession of firearms—an ongoing offense. The offense is continuous in nature and weighs against a finding that the information is stale.

The second factor considers whether the suspected criminal is "nomadic" or "entrenched." "If a criminal defendant moves frequently with the hope of avoiding detection or capture, the probability that the evidence of his criminal conduct will be found in a given location diminishes rapidly with the passage of time." *Goodwin*, 552 F. App'x at 545 (citing *Abboud*, 438 F.3d at 573). Here, the tip alleged Jefferson had firearms in his home and showed photographs of Jefferson with the firearms. Officer Woodrow confirmed Jefferson's address with his operator's license and vehicle registration, observed his and his girlfriend's vehicles at the Payne Ave address, and matched a ceiling fan from the FaceTime screenshots to a ceiling fan photographed in a rental listing for the address. Based on the information in the affidavit, there was a fair probability that Jefferson was "entrenched" at 117 Payne Ave and that the guns would be located there.

The search warrant sought any firearms in Jefferson's possession—specifically handguns and rifles. Firearms are durable goods that often remain in a criminal's possession for a long period of time. *See. Goodwin*, 552 F.App'x at 545; *Pritchett*, 40 F.App'x at 906; *United States v. Woods*, 858 F.App'x 868, 872 n. 1 (6th Cir. 2021). The firearms and attachments being sought after in the warrant are durable in nature and have continuing value to their possessor. The third factor also weighs against a finding of staleness.

The final factor considers whether the evidence is found at a secure operational base. The screenshot of Jefferson holding the weapons and further findings by Officer Woodrow indicates the crime happened in his home and the likelihood of continuing possession of the firearm, as described above, indicates the residence is a "secure operational base" for the criminal activity. *See Goodwin*, 552 F.App'x at 546.

Each factor weighs against a claim of staleness. The information contained in the affidavit established that there was a fair probability that firearms would be found at Jefferson's residence.

*B. Nexus Between 117 Payne Ave and Jefferson's Possession*

Jefferson argues that the affidavit did not establish a nexus between alleged possession of the firearms and the 117 Payne Ave residence.

To find probable cause, a magistrate must decide there is "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Whiteside*, 141 F.4th 734, 742 (6th Cir. 2025) (quoting *Gates*, 462 U.S. at 238). There must be "a nexus between the place to be searched and the evidence sought." *United States v. Gardiner*, 463 F.3d 445, 470 (6th Cir. 2006) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). Courts "afford considerable weight to the conclusion of experience law enforcement officers" about "where evidence of a crime is likely to be found." *Whiteside*, 141 F.4th at 742 (citing *United States v.*

*Williams*, 544 F.3d 683, 686 (6th Cir. 2008)). "A magistrate may infer a nexus between a suspect and his residence, depending upon 'the type of crime being investigated, the nature of the things seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places.'" *Williams*, 544 F.3d at 687 (quoting *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir. 1985)).

Determining if a search warrant showed a sufficient nexus, and whether there was probable cause, is a fact-intensive inquiry. In the present case, the warrant affidavit set forth sufficient facts to permit the issuing judge to infer a link between the firearms sought and Jefferson's residence. The tipster stated that he saw Jefferson in his home on a FaceTime call holding the firearms. As stated previously, the warrant application stated that Officer Woodrow confirmed the man in the screenshots was Jefferson using his operator's license. Woodrow additionally confirmed Jefferson is a convicted felon by calling Probation and Parole and confirmed that his residence was 117 Payne Ave through his license, vehicle registration, and observation. Jefferson was shown handling firearms in screenshots from a FaceTime conversation and Officer Woodrow compared a ceiling fan in those screenshots to a matching one in photographs from an old listing of the apartment. Given that evidence, the issuing judge could have reasonably inferred that Jefferson kept the handguns at his residence.

### *C. The* Leon *Exception*

At the very least, the evidence seized from 117 Payne Ave should not be suppressed under the exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 909 (1984). In that case, the Court created an exception to the exclusionary rule for evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id*. at 905. Here, Jefferson argues that the affidavit was "bare-bones" and "so facially deficient that

officers cannot reasonably presume validity." As stated previously, the affidavit contained specific information about where Jefferson lived, Officer Woodrow's observations about activity in front of the residence, and screenshots of Jefferson holding firearms in what appeared to be his home. A reasonable officer would believe that probable case existed to search 117 Payne Ave.

## III. CONCLUSION

For these reasons, the Court hereby ORDERS that Jefferson's Motion to Suppress (R. 15) is DENIED.

September 28, 2026.

**Signed By:**

***Karen K. Caldwell*** KKC

**United States District Judge**